JUDGE HELLERSTEIN

# 13 CV 0299

TARTER KRINSKY & DROGIN LLP
*Attorneys for Plaintiffs Charles V. Iannazzo*
*and William Hirsch*
Eric Su (ES-0626)
Kieran B. Morrow (KM-4259)
1350 Broadway
New York, New York 10018
PH: (212) 216-8000
FX: (212) 216-8001

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
JAN 1 4 2013
U.S.D.C. S.D. N.Y.
CASHIERS

--------------------------------------------------------x
CHARLES V. IANNAZZO, Individually          :
and Derivatively on Behalf of GRI          :
PARTNERS LLC, and WILLIAM                  :
HIRSCH, Individually,                      :          **VERIFIED COMPLAINT**
                                           :
                          Plaintiffs,      :
                                           :
          -against-                        :          **JURY TRIAL DEMANDED**
                                           :
JEFFREY A. DASH a/k/a JEFFREY A.           :
DASHOWITZ, DASH GROUP INC., A              :
CORPORATION, and GRI PARTNERS              :
LLC, a California limited liability        :
company,                                   :
                          Defendants.      :
--------------------------------------------------------x

     Plaintiff Charles V. Iannazzo ("Iannazzo") individually, and derivatively on behalf of

defendant GRI Partners LLC ("GRI" or the "LLC"), and plaintiff William Hirsch ("Hirsch;"

together with Iannazo, "Plaintiffs"), by their attorneys Tarter Krinsky & Drogin LLP, allege for

this Verified Complaint with knowledge as to their own acts and status and upon information and

belief as to all other matters, as follows:

## THE PARTIES

1.     Plaintiff Iannazzo is a citizen of the state of New York who currently resides at 33 Contempra Circle in Tappan, New York, 10983.

2.     Plaintiff Hirsch is a citizen of the state of New York who currently resides at 652 Veterans Highway, Apt. 1B, in Hauppauge, New York 11749 and maintains a business address at 169 Commack Road, Suite 179, Commack, New York 11725.

3.     Upon information and belief, defendant Dash is a citizen of the state of California, with a last known address at 316 N. Rossmore Ave., Apt. 307, Los Angeles, California, 90004.

4.     Upon information and belief, defendant GRI is or was a limited liability company organized and existing pursuant to the laws of the state of California whose offices are located at 550 North Larchmont Boulevard, Suite 201, in Los Angeles, California.

5.     Upon information and belief, Defendant Dash is the Chief Executive Officer ("CEO") and managing member of GRI, which was or is in the business of "housing the rights, title, and interest" to business opportunities involving the marketing, licensing, and branding of products and projects centered on lounge singer/actor Gianni Russo's image and/or persona.

6.     Upon information and belief, defendant Dash Group, Inc., A Corporation ("Dash Group") is or was a sole proprietorship owned and controlled by Dash that was established by Dash in 2002.  It maintains an address at 550 North Larchmont Boulevard, Suite 201, in Los Angeles, California.

7.     Dash Group is not currently registered as a corporation or limited liability company with the Secretaries of State of California, Delaware, or Nevada.  Upon information and belief, Dash Group is the alter ego of Jeffrey A. Dash and has no other legal existence.

## THE DERIVATIVE CLAIMS

8.      Plaintiff Iannazzo brings Counts I and VI as derivative claims pursuant to Rule 23.1 of the Federal Rules of Civil Procedure.

9.      Plaintiffs Iannazzo brings those derivative claims in the right and for the benefit of GRI to redress injuries suffered by GRI as a direct result of the violations described herein. GRI is a nominal defendant in a derivative capacity with regard to those claims only.

10.     Plaintiff Iannazzo will adequately and fairly represent the interests of GRI and its members in enforcing and prosecuting its rights.

11.     This is not a collusive action to confer jurisdiction on this Court that the Court would not otherwise have.

12.     Plaintiff Iannazzo was a member of GRI at the time of the actions complained of herein and remains a member.

13.     Plaintiff Iannazzo has not made a demand on Dash, the CEO and managing member of GRI, to prosecute those claims brought derivatively, as such a demand would be futile and useless:  Dash is the perpetrator of the breaches of fiduciary duty and other misconduct complained of herein, and would not bring suit against himself for committing said malfeasance.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, in that this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15.     Venue is proper in this judicial district, *inter alia*, pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to plaintiffs' claims occurred in this judicial district.

## NATURE OF THE ACTION

16.     This is a derivative action brought by Iannazzo on behalf of defendant GRI, and a direct action brought by Iannazzo and Hirsch against GRI and Jeffrey A. Dash a/k/a Jeffrey A. Dashowitz ("Dash"), the CEO and managing member of GRI, for GRI's default on loans made to it by Plaintiffs and for Dash's improper and unauthorized use and diversion, via his corporate alter ego, defendant Dash Group, Inc., A Corporation ("Dash Group") of the "angel investments" and loans made by Plaintiffs in and to GRI, a limited liability company purportedly engaged in the business of monetizing the image and persona of Gianni Russo ("Russo"), an actor and lounge singer best known for his role as "Carlo Rizzi" in the 1972 Francis Ford Coppola film "The Godfather."

17.     Russo, the public face of the venture, initially met Iannazzo in 2008. In 2009, he informed Iannazzo of his potential business opportunities, from Gianni Russo-branded pasta sauce and wine to a book and film based on Russo's life, and asked Iannazzo if he had any interest in investing in these business opportunities. When Iannazzo agreed, Dash, who was held out to Plaintiffs by Russo as the businessman or "money man" behind these business ventures, contacted Iannazzo in August 2009 and, representing to him that GRI had just been formed, corroborated Russo's representation that there was a market for Russo-branded products and indicated that others were planning to make "a substantial investment to expedite growth of the Gianni Russo related brands."

18.     In August 2009 and again in late 2009 and early 2010, Dash, with Russo's assistance, solicited $200,000 worth of "angel investments" in GRI from plaintiff Iannazzo in exchange for a two percent ownership interest in the LLC.  Dash instructed Iannazzo to send the "angel investments" to Dash Group, a corporate entity owned and controlled by Dash, in the form of cashier's checks payable to Dash Group.

19.     Although Dash emailed Iannazzo's form K-1s for the years 2009-2011 for GRI, Iannazzo never received any income from his "angel investments."   Moreover, Dash never provided Iannazzo with any reports or updates concerning GRI's finances, its other members or investors (if any), its assets and liabilities, or its performance.

20.     Subsequently, in August 2010, Dash, claiming that additional financing was needed, induced Plaintiffs to loan GRI $150,000.  Again, Plaintiffs were instructed to send the money to Dash Group and make the cashier's checks payable to Dash Group.

21.     Dash always told Plaintiffs to send monies intended for GRI to Dash Group in a form payable to Dash Group; he never directed them to send the money to GRI, or to send the funds in a form payable to GRI.   Upon information and belief, Dash never opened a bank account in GRI's name and never transferred the funds intended for GRI to that entity.

22.     The August 2010 loans that Plaintiffs made to GRI were evidenced by promissory notes signed by Dash as GRI's Chief Executive Officer.  From September 2010 to May 2012, GRI paid Plaintiffs' interest payments on or about the 24th of each month, pursuant to the terms of the promissory notes.

23.     In June 2012, however, Dash caused GRI to breach the terms of the promissory notes by ceasing to make the monthly interest payments due under the terms of the notes.  Dash told Plaintiffs that the cessation of the interest payments was temporary and intended to give the

impression to a plaintiff in a lawsuit against Russo, Dash, GRI, and another LLC responsible for managing Russo's brand of wines, that GRI was not profitable and therefore was not a source for the satisfaction of other financial obligations.  GRI did not resume payments of interest to Plaintiffs did not resume after the settlement of that other litigation and still has not resumed as of the filing of this Complaint.

24.     In fact, to facilitate the settlement of that litigation, Russo asked Iannazzo to loan him $90,000, the amount of the settlement sum in the other litigation, as apparently Russo, Dash, GRI, and the other defendants together were unable to amass that sum.  Russo's request made clear to Plaintiffs that Dash's claim regarding the reason for the cessation of the interest payments under the promissory notes had been a falsehood, and that despite their investments and loans, GRI in fact had no assets.

25.     Iannazzo declined to make a loan to Russo, as he and Hirsch were disturbed by the allegations made in the other litigation, which included claims that Dash had been diverting "income and investment monies" intended for one of Dash's limited liability companies to another of Dash's limited liability companies.

26.     Plaintiffs were also concerned by revelations of misrepresentations by Dash and Russo regarding the popularity and availability of Russo-brand wines, Iannazzo's difficulty in obtaining a forthright answer regarding the profitability of the wine business, as well as Dash's misrepresentations about the breach of the terms of the promissory notes.

27.     Plaintiffs also realized that they had no confirmation that Dash had used their investment and/or loan funds for GRI's benefit and/or the purposes that he had claimed the funds would be used for.

28.     Plaintiffs thus decided to sever ties with GRI.

29.     Accordingly, on or about December 13, 2012, both Plaintiffs served on GRI and Dash demands for the repayment of their loan principal and missed interest payments on the promissory notes. Dash ignored the demands and caused GRI to fail to repay the monies owed.

30.     On or about December 13, 2012, Iannazzo also served on GRI and Dash, pursuant to Cal. Corp. Code § 17106, requests for, *inter alia*, a list of the members of GRI, the last six years of GRI's income tax returns and financial statements, and the last four years of books and records regarding the specific branding and business opportunities Dash and Russo had used to induce Plaintiffs to invest. Dash caused GRI to fail to respond to this request also.

31.     Accordingly, Dash has caused GRI to breach materially the terms of the promissory notes securing Plaintiffs' loans, and Plaintiffs are now entitled to immediate repayment of the loan principal and accrued interest.

32.     Plaintiff Iannazzo is also entitled to the information that he requested pursuant to Cal. Corp. Code § 17106, and the attorneys' fees provided for by that statute resulting from defendants' unjustified failure to respond to his request.

33.     By converting and/or diverting the funds Plaintiffs loaned to or invested in GRI to himself, to one of his other businesses, or to another unauthorized use, Dash, as GRI's Chief Executive Officer and managing member, has breached his fiduciary duties to GRI.

34.     By causing GRI to default on Plaintiffs' loans and disregard plaintiff Iannazzo's rights as a minority member of and economic stakeholder in the LLC, Dash has also breached his fiduciary duties.

35.     GRI and Dash have also, *inter alia*, committed breach of contract, violated Section 17106 of the California Corporate Code, and are liable for recovery on a promissory note.

00578474

## FACTS RELEVANT TO ALL CAUSES OF ACTION

36.   In August 2008, plaintiff Iannazzo met Russo, an entertainer, through a mutual friend while attending the Sorrento Fisherman's Feast in the North End of Boston, where Russo was making an appearance.

37.   In August 2009, Iannazzo and Russo met at the Fisherman's Feast again. This time, Russo engaged Iannazzo in conversation. The two went to lunch and Russo told Iannazzo that Russo was exploring multiple business and branding opportunities involving Russo's name and persona, including, *inter alia*, wine and wine distribution, pasta sauce, a book and film about Russo's life, and music performance and production. Russo asked Iannazzo if he wanted to invest in these opportunities, and the two discussed an investment amount of $100,000.

38.   The day after the Fisherman's Feast, Russo took Iannazzo to the North Boston set of the Academy Award®-winning film "The Fighter," where he introduced Iannazzo to actor Mark Wahlberg ("Wahlberg") and director David O. Russell ("Russell"). Wahlberg corroborated Russo's representation that Wahlberg was interested in portraying Russo in a film about Russo's life. This event gave Iannazzo comfort about his investment.

39.   Russo told Iannazzo that Iannazzo would be contacted by Dash, whom Russo described as his partner and the "business man" or "money man" behind the venture. Russo told Iannazzo that Dash owned several businesses and portrayed him as a major "Hollywood player."

40.   Russo informed Iannazzo that Dash would contact Iannazzo regarding the details of where to send his $100,000 investment.

41.   On August 16, 2009, Iannazzo received an e-mail from defendant Dash (the "August 2009 E-mail") from the email address "jdash@dashollywood.com." Upon information

and belief, Dashollywood.com is one of the multiple businesses that Dash owns and controls. Upon information and belief, some of these businesses employed Russo in or prior to 2011.[1]

42.     In the August 2009 E-mail, Dash represented to Iannazzo that "[p]er my conversation with Gianni he wanted to include you in the branding, licensing, food, wine and related film amd books opportunities." Dash further stated that "we have created a California LLC to house the rights, title and interest in these endeavors. We are currently negotiating with two groups who have expressed definitive interest in a substantial investment to expedite growth of the Gianni Russo related brands."

43.     Dash also claimed in the August 2009 E-mail that "Gianni would like to position [Iannazzo's] investment as an 'Angel' investor who will receive 100% of the benefits and rights as all shareholders as the brand continues its growth. For a $100,000 investment we will allocate 1% (with no dilution) stock interest in the company."

44.     Because an investment of $100,000 purchased a one percent interest in the LLC, the August 2009 E-mail affirmatively indicated that the total value of the "California LLC" in question was or would be $10 million.

45.     In the August 2009 E-mail, Dash instructed Iannazzo to wire his $100,000 "angel investment" not to the "California LLC" described in the e-mail, but to the Wells Fargo Bank trust account of Dash Group.

46.     On August 19, 2009, Iannazzo sent a cashier's check in the amount of $100,000 payable to Dash Group to Dash Group's Los Angeles address: 550 North Larchmont Boulevard,

---

[1] Two of these businesses, Gianni Russo International, LLC (a Nevada limited liability company of which Dash is the managing member), and 1826 & Counting, Inc. (a California corporation controlled by Dash), were included on an amended list of creditors filed in Russo's July 2011 Chapter 7 bankruptcy. Russo owed the two businesses an aggregate amount of $216,594.70 for "advance[s] for future earnings."

Suite 201, Los Angeles, California 90004. The check was sent by certified mail and receipt was confirmed.

47.     Eight days later, on or about August 27, 2009, defendant GRI was registered with the California Secretary of State. Dash was listed as GRI's agent for service of process, and GRI's address was given as 550 N. Larchmont Boulevard, Suite 201, Los Angeles, California 90004.

48.     Upon information and belief, the 550 North Larchmont Boulevard address is also used by numerous other companies owned and controlled by Dash, including, but not limited to, Dash Group, Dashollywood.com. and a California corporation known as 1826 & Counting, Inc.

49.     On November 3, 2009, Iannazzo was issued a stock certificate, signed by Dash and Russo, representing that Iannazzo was the holder of a one percent ownership interest in GRI.

50.     Thereafter, Russo, who frequently met with Iannazzo in New York, asked Iannazzo for additional "angel investments," claiming that GRI was expanding the brand and needed additional funds to purchase promotional sunglasses and dress shirts, which would assist with brand recognition.

51.     Iannazzo agreed to invest more money, and Dash again contacted Iannazzo and instructed him to send the requested investment funds to Dash Group, even though GRI, the California LLC referenced in the August 2009 E-mail, had now been formed.

52.     Accordingly, on November 24, 2009, Iannazzo sent to Dash Group a cashier's check payable to Dash Group in the amount of $50,000. The check was sent by certified mail and receipt was confirmed.

53.     On January 13, 2010, Iannazzo sent to Dash Group two additional cashier's checks payable to Dash Group in the amounts of $35,000 and $15,000, for a total, when

combined with his November 24 investment, of $100,000.  The checks were sent by certified mail and receipt was confirmed.

54.    On February 27, 2010, Dash and Russo issued a second stock certificate to Iannazzo, indicating that Iannazzo was the holder of an additional one percent ownership interest in GRI.

55.    Dash emailed Iannazzo's accountant K-1s from GRI for the years 2009 to 2011, but Iannazzo never received any return on his "angel investment."

56.    On August 10, 2010, Dash sent Iannazzo an e-mail entitled "GRI PARTNERS LLC UPDATE" (the "August 2010 Update").  In the August 2010 Update, Dash stated, *inter alia*, that "we [the Russo wines] have been approved by Kroger" and that Ralph's, one of the supermarkets under the Kroger umbrella, would be "call[ing] 4 of our entry level wines" and "we are working with their marketing department to roll our a store supported tour for Gianni to make appearances and bring additional attention to our wine."

57.    Dash also represented in the August 2010 Update that the film "The Friends of Gianni Russo" was "set to begin principal photography in January 2011 in New York City" and that George Gallo "has come aboard to direct," while Brett Rattner "has come aboard to produce through his company Rat Entertainment."

58.    With regard to the Russo-brand wines, the August 2010 Update stated:

> We have been in negotiations for about a month with MHW [the United States distributor of Russo wines] to reduce our compliance costs, shipping and warehousing fees to allow for the company to realize a stronger bottom line.  To accomplish this we need to factor our receivables which will put us in the position to control the net profit per container.  **I am reaching out to you to see if you, or anyone you know are in the position to assist with providing the financing.  We are offering 12% guaranteed interest annually (payable monthly).  The**

**investment is 100% receivable backed and will be collected on our behalf by MHW. Based on our assumptions for the balance of 2011, we will need a minimum of $100,000.00 available to get started.** (Emphasis added.)

59.     In response to this request for a receivables-backed loan, on August 19, 2010, Iannazzo, again pursuant to Dash's instructions, sent Dash Group a cashier's check for $50,000, payable to Dash Group.

60.     Iannazzo had also told plaintiff Hirsch, his friend of forty years and former brother-in-law, about the GRI business endeavors, and Hirsch decided to invest also. Accordingly, on August 17, 2010, Hirsch similarly sent Dash Group a cashier's check for $100,000, payable to Dash Group.

61.     Hirsch sent this check by overnight courier and receipt was confirmed.

62.     Dash always instructed Plaintiffs to send funds intended for GRI in a form payable to Dash Group, and to Dash Group's bank account and/or care of Dash Group at the North Larchmont Boulevard address.

63.     Upon information and belief, the funds sent and intended by Plaintiffs as investments in or loans to GRI were either converted or improperly used by Dash for the benefit of Dash Group or one of Dash's other companies, or for Dash's own personal benefit.

64.     In return for their August 2010 loans/investments, Iannazzo and Hirsch received promissory notes signed by Dash in his capacity as the CEO of GRI (the "Notes").

65.     Both Notes stated that the loan periods were one year, with options to extend. They further provided that the interest rate was 12% per year, or one percent per month. Iannazzo was to receive $500.00 a month in interest payments, while Hirsch was to receive

$1,000.00 per month in interest payments, payable on the 24th day of each month. The interest payments were to be wired into Iannazzo's and Hirsch's respective bank accounts.

66.    Both Notes also stated that "if this Note is to be given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement . . . then [GRI Partners, LLC] shall pay [Hirsch and/or Iannazzo] all costs of collection and enforcement, including reasonable attorneys' fees and court costs in addition to other amounts due."

67.    The interest payments were remitted to Hirsch and Iannazzo per the terms of their respective Notes from September 2010 through May 2012. After May 2012, GRI stopped making interest payments to both Plaintiffs and never resumed.

68.    The Plaintiffs telephoned Dash to inquire why they had not received the June 2012 interest payments. Dash informed them that GRI had stopped making the interest payments temporarily because Dash wished to give the impression to Lisa Peretti ("Peretti"), a 10% shareholder and managing member in a Nevada limited liability company known as Gianni Russo International LLC ("Russo International"), which managed the Russo wine business and of which Dash was the managing member, that GRI had no assets, and thus was not a source of funds to satisfy financial obligations Russo International owed to Peretti.

69.    In October 2010, Peretti had filed suit against Russo, defendant Dash, Dorothy Russo (who is, upon information and belief, Russo's sister), Russo International, and defendant GRI in the Supreme Court of the State of New York, New York County, under the index number 113445/2010 (the "Peretti Action").

70.    The complaint in the Peretti Action alleged, *inter alia*, that the defendants in the Peretti Action had been "diverting income and investment monies" from Russo International to

defendant GRI in order to prevent Peretti from receiving her 10% profit share of Russo International's income, per the terms of her employment agreement with Russo International.

71.     Among the remedies sought in the Peretti Action, Peretti demanded, *inter alia*, access to GRI's accounting records.

72.     The Peretti Action was settled by a so-ordered stipulation among the parties in August 2012.  The settlement terms included a payment of $90,000 to Peretti from the Peretti Action defendants.

73.     Subsequent to the execution of the settlement agreement in the Peretti Action, Russo asked Iannazzo for a loan of $90,000 to fund the settlement sum in the Peretti Action.

74.     By this time, Iannazzo's suspicions had already been aroused by a number of events concerning the Russo business endeavors and he declined to loan Russo the money.  The material breach of the Notes, the explanation Dash had given Plaintiffs for said breach, and the fact that all of the defendants in the Peretti Action combined could not come up with the $90,000 that they had agreed to pay Peretti only gave Iannazzo further cause for concern.

75.     Iannazzo's suspicions were first aroused when, prior to the settlement of the Peretti Action, Russo had told Iannazzo that the Hard Rock Café in Miami was serving Russo wines.

76.     While in Miami for a wine-tasting event in or about 2010, Iannazo had gone to the Hard Rock Café and met with its food and beverage manager, who had informed Iannazzo that he had never heard of Gianni Russo-brand wine, let alone entered into any arrangement to serve them.

77.     Iannazzo also had confronted Russo about the disposition of the profits from the sale of the Russo wines.  Russo had responded that the money from the wine sales was being

reinvested into the business, and that they were continuing to add new restaurants and chains to the allegedly impressive roster of restaurants and stores already selling and serving Russo wines.

78.     However, at the same time that Iannazzo had visited the Hard Rock Café in 2010, he had also visited several popular bars and lounges in Miami to inquire about Russo-brand wines and, as had happened at the Hard Rock Café, had been informed that these establishments also were unfamiliar with Russo wines. Iannazzo also found that Russo-brand wines were not for sale in ABC liquor stores or Total Wine, a multi-state wine and spirits vendor with multiple Florida locations.

79.     When Iannazzo confronted Russo about why, contrary to Russo's representations, Russo-brand wines did not seem to be available for sale anywhere in Florida, and asked Russo who was actually running the wine business, Russo replied that he "would look into it." Iannazzo deemed this response both insufficient and unsatisfactory.

80.     Moreover, Plaintiffs were concerned by the allegations made in the Peretti Action. Furthermore, Dash and Russo had made misrepresentations to Plaintiffs about the Peretti Action, dismissing it as "frivolous" and representing that it involved only California and Nevada.

81.     Iannazzo subsequently discovered that the Peretti Action was, in fact, a New York litigation when he was subpoenaed by Peretti as a witness. Plaintiffs also concluded that the fact that Dash, Russo, and the other defendants in the Peretti Action were willing to pay Peretti nearly a hundred thousand dollars in settlement belied their declaration that Peretti's claims were "frivolous."

82.     Accordingly, on or about December 13, 2012, Plaintiffs, through counsel, sent GRI, via certified mail and e-mail to Dash's attention, demand letters for the unpaid and overdue balances on their loans to GRI. Both demanded payment of the total outstanding loan balances,

as well as the unremitted monthly interest payments for the period June to December 2012 – in Iannazzo's case, $53,000; in Hirsch's case, $106,000. Dash neither responded nor caused GRI to remit the requested payment.

83.     Through counsel, on or about December 13, 2012, Iannazzo also sent GRI, via certified mail and e-mail to Dash's attention, a request pursuant to Section 17106 of the California Corporate Code for, *inter alia*:

a.   A current list of the full names and last known addresses of each member and holder of an economic interest in GRI, together with the contribution ane the share in profits and losses of each member and holder of an economic interest;

b.   The last six years of GRI's federal, state, and local tax returns and financial statements;

c.   A copy of GRI's articles of organization and operating agreement;

d.   The last four years of GRI's books and records concerning "food and wine branding, distribution and retailing, branding and licensing opportunities with various retail chains, film project(s), 'Godfather themed board game,' and book releases."

84.     As of the date of the filing of this Complaint, Dash neither responded nor caused GRI to provide any documents or information in response to Iannazzo's request.

## COUNT I
### (Breach of Fiduciary Duty -- Derivative)

85.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 84 of the Complaint as if fully set forth herein.

86.     At all relevant times, by reason of his position as GRI's Chief Executive Officer and managing member, his control of GRI, and his power to act on behalf of GRI, Dash owed GRI duties, including the obligation of good faith, fair dealing, loyalty, and due care.

87.     As set forth above, Dash violated his duties to GRI by taking actions that were deliberately contrary to the interest of GRI, including, but not limited to,

        a.  diverting and/or converting funds intended as investments in and/or loans to GRI for his own unauthorized purposes and/or to other companies under his control;

        b.  causing GRI to default on the Notes; and

        c.  causing GRI to violate Section 17106 of the California Corporate Code.

## COUNT III
### (Breach of Contract – Direct)

88.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 87 of the Complaint as if fully set forth herein.

89.     Dash, in his capacity as CEO of defendant GRI, executed the Notes on August 29, 2010.

90.     Dash caused GRI to default on its obligation under the Notes when, in June 2012, GRI ceased and never resumed making to Plaintiffs the monthly interest payments required under the terms of the Notes.

91.     As a result of GRI's conduct, Plaintiffs have been damaged in an amount to be determined at trial, but not less than $159,000.00.

## COUNT IV
### (Recovery on a Promissory Note -- Direct)

92.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 91 of the Complaint as if fully set forth herein.

93.     Dash executed the Notes on behalf of defendant GRI after receiving a loan of $50,000 from plaintiff Iannazzo and a loan of $100,000 from plaintiff Hirsch.

94.     Both Notes contain an unconditional promise to pay the principal amount of the respective loans after a period of one year, as well as an unconditional promise to pay "interest at the yearly rate of 12% (1% per month on the unpaid balance)" of each Plaintiff's loan.

95.     Accordingly, both Notes, which are dated August 29, 2010, became due and payable in full on August 29, 2011.

96.     GRI did not repay the principal amount of either loan on August 29, 2011 or at any time thereafter.

97.     Dash caused GRI to cease making interest payments on both Notes in June 2012 in an attempt to defraud a plaintiff in another lawsuit in which Dash and GRI were defendants.

98.     As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, but not less than $159,000.


## COUNT V
### (Breach of Fiduciary Duty – Direct)

99.     Plaintiff Iannazzo repeats the allegations set forth in paragraphs 1 through 98 of the Complaint as if fully set forth herein.

100.    As owner of a two percent interest in GRI, Iannazzo was a minority member of GRI.

101.   At all relevant times, by reason of his position as GRI's Chief Executive Officer and managing member, his control of GRI, and his power to act on behalf of GRI, Dash owed Iannazzo, as a minority member of GRI, duties, including the obligation of good faith, fair dealing, loyalty, and due care.

102.   As a result of the foregoing, Dash repeatedly violated the duties he owed to Iannazzo.

103.   Iannazzo has suffered injury as a direct and proximate result of Dash's unlawful actions, including, but not limited to, monetary injury.   As a result of the conduct alleged herein, Dash is liable to Iannazzo in an amount to be determined at trial, but not less than $250,000.

## COUNT VI
### (Monies Had and Received -- Derivative)

104.   Plaintiff repeats, restates, and realleges the allegations contained in paragraphs 1 through 103 above, as if set forth herein again in full.

105.   Dash has received monies from Iannazzo and Hirsch through his alter ego, Dash Group, which monies were intended as "angel investments" in and loans to GRI.

106.   Based on the foregoing, there is now due and owing from Dash and Dash Group to GRI an amount not presently known, but believed to be no less than $350,000.00, plus interest, for monies had and received by Dash and Dash Group, which funds belong to GRI.

## COUNT VII
### (Violation of Cal. Corp. Code. § 17106-- Direct)

107.   Plaintiff repeats, restates, and realleges the allegations contained in paragraphs 1 through 106 above, as if set forth herein again in full.

108.    Defendant GRI is a limited liability corporation formed under the laws of the state of California.

109.    As a result of the $200,000 "angel investment" that plaintiff Iannazzo made in GRI between August 2009 and August 2010, Iannazzo is a minority member of and holder of an economic interest in GRI.

110.    Accordingly, pursuant to Cal. Corp. Code. § 17106, Iannazzo is entitled to the information and/or materials requested in his December 13, 2012 letter to GRI and Dash, GRI's CEO and managing member, or to otherwise examine the books and records of GRI.

111.    Dash and GRI's failure to respond to Iannazzo's request for information was without justification.

112.    Pursuant to Cal. Corp. Code. § 17106(f), this Court may enforce "the duty of making and mailing or delivering the information and financial statements required" by Cal. Corp. Code. § 17106.

## COUNT VIII
### (Request for Expenses and Attorney's Fees -- Direct)

113.    Plaintiff Iannazzo repeats the allegations set forth in paragraphs 1 through 112 of the Complaint as if fully set forth herein.

114.    Defendant GRI is a limited liability corporation formed under the laws of the state of California.

115.    As a result of the $200,000 "angel investment" that plaintiff Iannazzo made in GRI between August 2009 and August 2010, Iannazzo is a member of and holder of an economic interest in GRI.

116.    Accordingly, pursuant to Cal. Corp. Code. § 17106, Iannazzo is entitled to the infrmation and/or materials requested in his December 13, 2012 letter to GRI and Dash, GRI's CEO.

117.    Dash and GRI's failure to respond to Iannazzo's request for information was without justification.

118.    Pursuant to Cal. Corp. Code. § 17106(g), Iannazzo is entitled to an award of "an amount sufficient to reimburse [Iannazzo] for the reasonable expenses incurred" in bringing this action, "including attorneys' fees, in connection with the action or proceeding."

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered:

(i)     Finding that plaintifff Iannazzo may maintain this action on behalf of GRI and that plaintiff Iannazzo is an adequate representative of GRI;

(ii)    Finding that Dash has breached his duties to GRI and to Iannazzo;

(iii)   Determining and awarding to GRI the damages sustained by it as a result of the violations set forth above from Dash;

(iv)    Awarding GRI the costs and disbursements of this action attributable to the causes of action brought on behalf of GRI, including reasonable attorneys' and experts' fees, costs, and expenses;

(v)     Determining and awarding to Plaintiffs the damages sustained by them as a result of the violations set forth above from Dash, which is an amount to be proven at trial, but not less than $359,000.00, together with interest thereon;

(vi)     Awarding Iannazzo the costs and disbursements of this action attributable to the causes of action brought on behalf of Iannazzo, including reasonable attorneys' and experts' , costs, and expenses;

(vii)    Ordering Dash and GRI, pursuant to Cal. Corp. Code. § 17106, to make available to plaintiff Iannazzo all information and/or materials requested in his December 13, 2012 letter to GRI and Dash, or to otherwise examine the books and records of GRI from its formation in or about August 2009 to the present;

(viii)   Awarding Plaintiffs pre-judgment interest from August 29, 2011 forward;

(ix)     Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues and claims so triable.

Dated:  New York, New York
January 14, 2013

> TARTER KRINSKY & DROGIN LLP
> *Attorneys for Plaintiffs Charles V. Iannazzo*
> *and William Hirsch*
>
> Eric Su (ES-0626)
> Kieran B. Morrow (KM-4259)
> 1350 Broadway
> New York, New York 10018
> PH:  (212) 216-8000
> FX:  (212) 216-8001

## VERIFICATION

I, **Charles V. Iannazzo**, hereby verify as follows:

1.      I am a member of GRI Partners LLC ("GRI"). I make this Verification in connection with the filing of the foregoing derivative and direct complaint.

2.      I currently hold an ownership stake in GRI, and have held such ownership stake continuously at all times relevant to this Complaint.

3.      I have reviewed the complaint and know the contents thereof. I verify that the allegations as to which I have personal knowledge are true. With respect to the remaining allegations, I am familiar with the factual basis for those allegations and verify them to be true to the best of my knowledge, information, and belief.

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of January 2013 at Tappan, New York.

CHARLES V. IANNAZZO

00582349

## VERIFICATION

I, **William Hirsch**, hereby verify as follows:

1.      I make this Verification in connection with the filing of the foregoing derivative and direct complaint.

2.      I have reviewed the complaint and know the contents thereof. I verify that the allegations as to which I have personal knowledge are true. With respect to the remaining allegations, I am familiar with the factual basis for those allegations and verify them to be true to the best of my knowledge, information, and belief.

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of January 2013 at Commack, New York.

WILLIAM HIRSCH